GDB/DJB: USAO 2019R00100

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. GJH 19cr68 |
| | * | |
| KENO ROMARIO BROWN, | * | (Conspiracy to Commit Wire Fraud |
| | * | and Mail Fraud, 18 U.S.C. § 1349; |
| Defendant | * | Wire Fraud, 18 U.S.C. § 1343; Mail |
| | * | Fraud, 18 U.S.C. § 1341; Aiding and |
| | * | Abetting, 18 U.S.C. § 2; Forfeiture, |
| | * | 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. |
| | * | § 2461(c), 21 U.S.C. § 853(p)) |
| | * | |

*******

## INDICTMENT

### COUNT ONE
(Conspiracy to Commit Wire Fraud and Mail Fraud)

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant to this Indictment:

1. Defendant **KENO ROMARIO BROWN ("BROWN")**, Onijah Crighton ("Crighton"), and **Co-conspirator 1** were residents of Maryland.

2. Company 1 was a direct marketing company that offered legitimate prizes and sweepstakes in the United States.

3. Company 2 was a magazine publishing company located in the United States.

4. **BROWN**, **Crighton**, and **Co-conspirator 1** were not employees of either Company 1 or Company 2.

5. A "runner" was an individual who received fraudulent proceeds as a courier for more senior members of the conspiracy.

6. The Internal Revenue Service was an agency of the United States responsible for administering the country's internal revenue laws.

## The Conspiracy

7. Beginning in or about April 2013 and continuing through at least in or about January 2018, in the District of Maryland and elsewhere, the defendant,

**KENO ROMARIO BROWN,**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to commit wire fraud and mail fraud, that is to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, promises, and omissions ("the scheme to defraud"), and for the purpose of executing and attempting to execute such scheme to defraud, did cause to be delivered by the United States Postal Service and by private and commercial interstate carrier according to the direction thereon any matter or thing, in violation of 18 U.S.C. § 1341, and did cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## Manner and Means of Conspiracy and Scheme to Defraud

It was part of the conspiracy and scheme to defraud that:

8. **BROWN, Crighton, Co-conspirator 1**, and others contacted individuals, often elderly individuals (collectively "the victims" of the conspiracy and scheme to defraud), by phone, text message, and email, and falsely told the victims that **BROWN, Crighton, and Co-conspirator 1** were representatives of Company 1 or Company 2, which sponsored a lottery or sweepstakes.

9. When **BROWN**, **Crighton**, and **Co-conspirator 1** contacted the victims, **BROWN**, **Crighton**, and **Co-conspirator 1** used aliases or altered their voices to conceal their identities. For example, **Crighton** and **Co-conspirator 1** used the aliases Tony Williams and Tony Wilson, respectively. **BROWN**, at times, spoke in a high-pitched voice when talking to victims over the phone.

10. **BROWN**, **Crighton**, and **Co-conspirator 1** misrepresented to the victims that the victims had won a lottery or sweepstake (collectively "the prize") sponsored by Company 1 or Company 2.

11. **BROWN**, **Crighton**, and **Co-conspirator 1** misrepresented to the victims that, in order to collect the prize, the victims had to pay advance fees and taxes to **BROWN**, **Crighton**, and **Co-conspirator 1**.

12. **BROWN**, **Crighton**, and **Co-conspirator 1** directed the victims to send the advance fees and taxes by electronic means or through an interstate mail carrier to runners who received fraudulent proceeds on behalf of **BROWN**, **Crighton**, and **Co-conspirator 1**.

13. **BROWN**, **Crighton**, and **Co-conspirator 1** directed the victims to send advance fees and taxes for the fictitious prize to electronic money transfer accounts—including Walmart's money transfer, Western Union, and MoneyGram accounts—and addresses **BROWN**, **Crighton**, and **Co-conspirator 1** controlled.

14. **Crighton** and **Co-conspirator 1** sent lulling emails to at least one victim misrepresenting that the co-conspirators intended to refund the advance fees and taxes that the victim had paid in order to receive the fictitious prize.

15. To launder the fraud proceeds, **BROWN** and **Crighton** fraudulently applied for and enrolled debits cards using the personal identifying information of elderly individuals, and deposited or caused to be deposited the proceeds of the fraud onto those debit cards.

### Overt Acts

16. In furtherance of the conspiracy, and to effect the objects thereof, **BROWN**, **Crighton**, and **Co-conspirator 1**, and other persons both known and unknown to the Grand Jury committed and caused to be committed the following acts, among others, in the District of Maryland and elsewhere:

   a. On or about June 7, 2013, **BROWN** emailed **Crighton** a spreadsheet containing the names, addresses, phone numbers, and ages of elderly individuals.

   b. On or about November 19, 2013, **BROWN** conducted Google searches for the phrases "american dreams sweepstakes," "sweepstakes leads broker," "mega millions account number for sale," "official letter from mega millions," "a official letter from the publisher clearing house," and "mega millions calling number."

   c. On or about November 19, 2013, **Crighton** emailed Victim 1 false documentation that misrepresented to Victim 1 that Victim 1 was the second-place winner of a prize sponsored by Company 1, and that **Crighton**—using the alias Tony Williams—was the Chief Financial Officer of Company 1.

   d. On or about November 20, 2013, **BROWN** conducted a Google search for the phrase "letter from the IRS informing a person about their mega millions winners."

   e. On or about November 27, 2013, **Crighton** acquired a call center script that was intended to persuade victims that the victims had won a prize sponsored by Company 1 and to pay fictitious advance fees by purchasing $500 Green Dot MonkeyPaks.

  f. On or about December 17, 2013, **Crighton** sent a lulling email to Victim 1 misrepresenting that **Crighton** intended to refund the advance fees and taxes that Victim 1 had paid in order to receive the fictitious prize, but that the refund would "take about 50 business days."

  g. On or about December 13, 2013, **Crighton** and **BROWN** caused the delivery of a debit card bearing Victim 1's name to **Crighton** and **BROWN** by soliciting Victim 1 to make an additional advance fee payment.

  h. On or about December 17, 2013, **Crighton** emailed Victim 1 stating that, in order to process Victim 1's refund, **Crighton** needed Victim 1's social security number and date of birth.

  i. On or about December 17, 2013, **Crighton** misrepresented to Victim 1 that, because Victim 1 did not pay additional advance fees, the Internal Revenue Service decided to donate his prize to the state.

  j. On or about January 22, 2014, **Co-conspirator 1** sent a lulling email to Victim 1 misrepresenting to Victim 1 that **Co-conspirator 1** intended to refund $56,975 to Victim 1.

  k. On or about January 23, 2014, **Co-conspirator 1** misrepresented to Victim 1 that **Co-conspirator 1** owed an "exemption fee and storage and carrier fee" before Victim 1 could collect Victim 1's prize, and directed Victim 1 to pay part of those fees by purchasing a $2,999 Green Dot MoneyPak, and to pay the balance of the fictitious fees by sending cash through the mail or making a bank deposit.

l. On or about July 10, 2013, **BROWN** caused Victim 2 to pay advance fees and taxes for a fictitious prize by making an electronic money transfer to one of **BROWN**'s runners.

m. Between in or about June 2014 and in or about July 2014, **BROWN** caused Victim 3 to pay advance fees and taxes for a fictitious prize by making electronic money transfers to one of **BROWN**'s runners.

n. On or about April 8, 2015, **BROWN** caused Victim 4 to pay advance fees and taxes for a fictitious prize by making an electronic money transfer to **BROWN**.

o. Between in or about November 2015 and in or about December 2015, **BROWN** caused Victim 5 to pay for advance fees and taxes for a fictitious prize by making electronic money transfers to **BROWN**.

p. On or about February 13, 2016, **BROWN** caused Victim 6 to pay advance fees and taxes for a fictitious prize by making an electronic money transfer to **BROWN**.

q. Between in or about April 2015 and in or about January 2018, **BROWN** caused Victim 7 to pay for fictitious advance fees and taxes by sending money through interstate mail carriers and making electronic money transfers to **BROWN** or one of **BROWN**'s runners.

r. In or about 2017, **BROWN** solicited Victim 8 to pay advance fees and taxes for a fictitious prize by sending a cashier's check through an interstate mail carrier and depositing cash into a Bank of America account ending in 4353 ("BOA 4353")—a bank account to which **BROWN** had access and that was opened in the name of one of **BROWN**'s runners.

s. On or about September 1, 2017, **BROWN** caused Victim 9 to pay advance fees and taxes for a fictitious prize by making an electronic money transfer to **BROWN**.

        t.        On or about June 5, 2017, **BROWN** caused Victim 10 to pay advance fees and taxes for a fictitious prize by making an electronic money transfer to one of **BROWN**'s runners.

        u.        On or about July 26, 2017, **BROWN** caused Victim 11 to pay advance fees and taxes for a fictitious prize by making an electronic money transfer to one of **BROWN**'s runners.

18 U.S.C. § 1349

## COUNTS TWO THROUGH FIVE
## (Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 6 and 8 through 15 are incorporated here.

2. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

**KENO ROMARIO BROWN,**

for the purpose of executing and attempting to execute the scheme to defraud, transmitted and caused to be transmitted by means of wire communication in interstate commerce, the following writings, signs, signals, pictures, and sounds:

| Count | Date | Description |
|---|---|---|
| 2 | April 1, 2015 | A $900 payment electronically transmitted via Walmart money transfer from Victim 7 in Colorado to **BROWN** in Maryland representing an advance fee for a fictitious lottery prize. |
| 3 | April 8, 2015 | A $250 payment electronically transmitted via Walmart money transfer from Victim 4 in California to **BROWN** in Maryland representing an advance fee for a fictitious lottery prize. |
| 4 | December 14, 2015 | A $350 payment electronically transmitted via Walmart money transfer from Victim 5 in Florida to **BROWN** in Maryland representing an advance fee for a fictitious lottery prize. |
| 5 | July 26, 2017 | A $390 payment electronically transmitted via Walmart money transfer from Victim 11 in North Carolina to **BROWN**'s runner in Maryland representing an advance fee for a fictitious lottery prize. |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNTS SIX THROUGH EIGHT
### (Mail Fraud)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 6 and 8 through 15 are incorporated here.

2. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

**KENO ROMARIO BROWN,**

for the purpose of executing and attempting to execute the scheme to defraud, knowingly caused to be delivered by mail and by private and commercial interstate carrier the following matters, in the form of the following packages containing advance fees and taxes for a fictitious lottery prize:

| Count | Date | Description |
|---|---|---|
| 6 | August 4, 2016 | Federal Express package 783746059590 from Victim 7 in Colorado to **BROWN** at **BROWN**'s residence in Maryland. |
| 7 | December 20, 2017 | Federal Express package 789058446080 from Victim 7 in Colorado to one of **BROWN**'s runners at **BROWN**'s residence Maryland. |
| 8 | January 3, 2018 | Federal Express package 789210263824 from Victim 7 in Colorado to one of **BROWN**'s runners in residence Maryland. |

18 U.S.C. § 1341

9

## **FORFEITURE ALLEGATION**

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C) as a result of the defendant's convictions under Counts One through Eight of the Indictment.

2. As a result of a conviction for the offenses charged in Counts One through Eight, the defendant,

## **KENO ROMARIO BROWN,**

will forfeit to the United States all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations. The property to be forfeited includes, but is not limited to, personal and real property, including United States currency.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of any defendant,

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)
21 U.S.C. § 853(p)

_Robert Hur /GDR_
Robert K. Hur
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date: Feb 11, 2019