**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. GJH-19-68 |
| | * | |
| KENO ROMARIO BROWN | * | |
| | * | |
| Defendant | * | |

\*\*\*\*\*\*\*

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE

Defendant Keno Brown filed motions in limine to exclude certain evidence, including evidence relating to the murder of Travis Ennis (ECF 32), Brown's physical abuse of Witness 1 (ECF 45), an incident where Brown physically assaulted Victim 2 (*id.*), and attribution evidence derived from Brown's naturalization application (*id.*). Brown also moved to exclude victim Joanne Hink's testimony or alternatively to exclude documents Hink produced. ECF 46.

The government recited the core facts of this case in its response to Brown's Rule 12 motions. ECF 34. In general, Brown, coconspirator Onijah Crighton, and others executed an advance fee lottery scheme. Brown and his coconspirators called senior citizens who lived all over the country, falsely represented to those senior citizens that they won the lottery or some other valuable prize, and convinced their victims that in order to collect their prizes, the victims had to pay certain fees and taxes in advance.

Brown then directed his victims to wire money through money transfer services (e.g., Western Union, RIA Financial, and MoneyGram), send packages of cash through the mail, deposit money into a Bank of America account Brown controlled, and upload money

1

onto prepaid debit cards that ended up in the hands of Brown and Crighton. The conspirators also used runners to further the scheme. For instance, Brown directed victims to send money to Witness 1—with whom Brown was romantically involved—then forced Witness 1 to remit that money to Brown.

In November 2017, Crighton and coconspirator Travis Ennis were federal indicted in the District of Maryland. *United States v. Onijah Crighton et al.*, PX-17-606. Crighton pled guilty, and Ennis was murdered before his case was adjudicated. Brown was thereafter charged in a separate indictment with mail fraud, wire fraud, and conspiracy to commit mail and wire fraud.

## I. *Murder of Travis Ennis (ECF 32)*

The government does not intend to introduce evidence related to Ennis's murder. To the extent the fact of Ennis's murder incidentally comes out during trial (e.g., on cross-examination), the government won't suggest that Brown was responsible or connected to the murder.

## II. *Brown's physical abuse of Witness 1 (ECF 45)*

Brown argues for the exclusion of Witness 1's testimony that Brown physically abused Witness 1 to coerce her into acting as a runner. Brown bases this argument on the premise that Witness 1's testimony would constitute Rule 404(b) evidence. This premise is wrong. Witness 1's testimony would not fall within the ambit of this rule because it is intrinsic to the charged offense.

Under Rule 404(b), other "acts are intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary

preliminaries to the crime charged." *United States v. Lightly*, 616 F.3d 321, 352 (4th Cir. 2010); *United States v. Otuya*, 720 F.3d 183, 188 (4th Cir. 2013) (evidence is intrinsic when it involves the same series of transactions as the charged offense).

As the Fourth Circuit has routinely observed, evidence "is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Id*. (*quoting United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007)). Thus, the government may offer evidence of uncharged conduct when it is necessary to complete the story of the charged offenses or "explains the relationship of parties or the circumstances surrounding a particular event." *United States v. Basham*, 561 F.3d 302, 327 (4th Cir. 2009); *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007) (evidence is intrinsic if it provides "context relevant to the criminal charges").

The government is not offering Witness 1's testimony to simply to show that Brown is a violent person, but rather to demonstrate how he executed the charged scheme to defraud his victims—in part by using physical abuse to force a woman into acting as a runner for the conspiracy described in the indictment. The introduction of this testimony is entirely consistent with federal case law holding that the defendant's use of violence to further the charged offense is intrinsic to the indictment, even when that violence would otherwise constitute a separate violation of the law. *United States v. Campbell*, 764 F.3d 880, 888 (8th Cir. 2014) (defendant's assaults on prostitutes were intrinsic because they were part of a "pattern intended to make [the prostitutes] believe that failure to continue with prostitution . . . would result in serious harm"); *United States v. Hashimi*, 768 F. App'x

3

159, 161 (4th Cir. 2019) (instances of domestic violence were intrinsic to drug conspiracy because violence was retribution for stealing cocaine from defendant and attempt to control coconspirator); *United States v. Thadsamany*, 305 F. App'x 942, 944 (4th Cir. 2009) (approving district court's admission of threats evidence as intrinsic because threats of violence are "tools of the trade of drug trafficking"); *United States v. Foster*, 2004 WL 225080, at *1 (D. Md. 2004) (holding that uncharged "murders are intrinsic to [narcotics] conspiracy, and evidence of them may be admitted without regard to Rule 404(b)").

Further, the physical abuse testimony is relevant to Witness 1's credibility. If excluded, the jury will unfairly regard Witness 1 as a through-and-through member of the conspiracy—someone who commits fraud and whose testimony should be viewed with extra skepticism. Brown's physical abuse of Witness 1 contextualizes Witness 1's testimony and explains that Witness 1 assisted with the fraud in part for fear of her own physical safety. *Untied States v. Corbin*, 607 F. App'x 136, 140 (3d Cir. 2015) (unpublished), *as amended* (Feb. 4, 2016) (holding that district court did not abuse discretion in permitting defendant's former girlfriend to testimony that the defendant "physically abused her" in part because the testimony helped explain why the witness assisted the defendant in the commission of the charged offenses) (citing *United States v. Green,* 617 F.3d 233, 251 (3d Cir. 2010) (citation omitted) (noting that "evidence concerning a witness's credibility is always relevant, because credibility is always at issue")).

### III     *Brown's physical assault of Witness 2 (ECF 45)*

Witness 2 reported to the government that he laundered money for Brown, that he and Brown got into an altercation over money that Witness 2 failed to remit to Brown, and that Brown slashed Witness 2's hand with a knife during this altercation. The government has not decided whether to introduce the slashing testimony, and therefore asks that the Court reserve on this motion in limine. If the government decides to offer testimony about the slashing, it will alert defense counsel and the Court so that the Court can resolve the motion outside the jury's presence.[1]

### IV.     *Attribution evidence derived from Brown's naturalization application (ECF 45)*

During the conspiracy, Brown used the email account longlife1965@gmail to further several aspects of the scheme. Brown reported that this was his email account on a United States naturalization application, which is one of the ways the government will attribute this account to Brown. The parties have reached a stipulation that renders this motion moot.

### V.     *Motion to exclude Joanne Hink's testimony (ECF 46)*

During Hink's testimony, the government found out—at the same time as Brown and his attorney—that Hink had documents related to the lottery scheme. When Hink's testimony concluded, the government took possession of those documents and copied them for Brown. Brown argues that the Court should impose the extreme sanction of excluding

---

[1] For now, the government notes that it did produce discovery related to the incident to Brown. With that said, discovery in this case has been voluminous, and it's understandable that defense counsel missed the report in discovery.

victim Joanne Hink's testimony, but fails to articulate what the government did wrong. *United States v. Rhynes*, 218 F.3d 310, 321 (4th Cir. 2000) (describing exclusion of witness testimony as extreme sanction); *Hatami v. Hatami*, 2015 WL 4509815, at *3 (D. Md. 2015) (noting that "excluding expert testimony is an extreme sanction") (citation omitted) (Gallagher, J.).

At the time of Hink's testimony, the contested documents were not in the government's possession. For that reason alone, the government did not violate *Brady*, *Giglio*, Rule 16, or the Jencks Act, which apply only to information and evidence in the custody or control of the prosecution team. Fed. R. Crim. P. 16(a)(1)(E) (government obligation to produce documents limited to material "within the government's possession, custody, or control"); 18 U.S.C. § 3500(a) (Jencks Act limited to statements "in the possession of the United States"); *United States v. Boyd*, 208 F.3d 638, 645 (7th Cir. 2000) (under *Brady* and its progeny, government cannot suppress evidence not within its custody or control); *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991); *United States v. Luis-Gonzalez*, 719 F.2d 1539, 1548 (11th Cir. 1983); *Pickens v. Gonzalez*, 2010 WL 128341, at *5 (C.D. Cal. 2010) (unpublished).

The Court should deny Brown's request to exclude the documents Hink provided for the same reason. *United States v. Cooper*, 947 F. Supp. 2d 108, 117 (D.D.C. 2013) (prior to taking a criminal deposition, the "government is not required to produce statements it does not possess"). The government has acted in good faith and complied with all of its discovery obligations. Moreover, Brown has failed to articulate any prejudice. He hasn't pointed to a single document he would have used to cross-examine

Hink, nor explained why he can't make the same point by introducing the relevant documents at trial. Even if Brown could make this showing, the government would consent to re-opening the deposition and allowing Brown to ask Hink additional questions about the recently-discovered documents. *Unite States v. Caramadre*, 882 F. Supp. 2d 295, 301 (2012) (in the context of a pre-indictment deposition, holding that "the test is not whether the defendant has been provided with an ideal cross-examination opportunity, one in which his or her attorney has complete knowledge of the evidence and clairvoyant understanding of how the trial will play out"). The Court should deny Brown's motion to exclude Hink's testimony and the documents Hink produced.

          Respectfully submitted,

          Robert K. Hur
          United States Attorney

          /s/ Gregory Bernstein
          Gregory Bernstein
          Dana Brusca
          Lindsay Kaplan